**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Owners Insurance Company, Auto-Owners
Insurance Company,

                    Plaintiffs,

                                                      Civ. No. 10-2868 (RHK/JJG)
                                                    **MEMORANDUM OPINION
                                                    AND ORDER**

v.

European Auto Works, Inc. d/b/a Autopia,
Percic Enterprises, Inc.,

                    Defendants.

---

Timothy P. Tobin, Gislason & Hunter LLP, Minneapolis, Minnesota, for Plaintiffs.

David M. Oppenheim, Anderson & Wanca, Rolling Meadows, Illinois, Jenneane L. Jansen, Jansen & Palmer LLC, Minneapolis, Minnesota, Brant D. Penney, Reinhardt Wendorf & Blanchfield, St. Paul, Minnesota, for Defendants.

---

**INTRODUCTION**

In this action, Plaintiffs Owners Insurance Co. ("Owners") and Auto-Owners Insurance Co. ("Auto-Owners") (collectively, "the Insurers") dispute coverage under policies they issued to Defendant European Auto Works, Inc. d/b/a Autopia ("Autopia"). The action arises out of an underlying lawsuit against Autopia by Defendant Percic Enterprises, Inc. ("Percic") for violation of the Telephone Consumer Protection Act ("TCPA").[1] The Insurers seek a declaration that their policies do not cover damages

---

[1] Although there are two Defendants in this action, the dispute turns on whether there is coverage under Defendant Autopia's insurance policy. Percic is joined as a Defendant because it was the

arising from TCPA violations and that they are not obligated to defend or indemnify Autopia. Each side has moved for summary judgment. For the reasons below, the Court will deny the Insurers' Motion, grant Autopia's Motion, and determine coverage exists.

## BACKGROUND

The relevant facts are undisputed. Percic sued Autopia in Hennepin County, Minnesota District Court, alleging that it had received an unsolicited faxed advertisement from Autopia in December 2005, in violation of the TCPA. The TCPA prohibits "us[ing] any telephone facsimile machine . . . to send, to a[nother] telephone facsimile machine, an <u>unsolicited</u> advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). Percic claimed it had not given Autopia permission to send it faxed advertisements, and thus Autopia violated the statute. In November 2009, it brought the underlying action on behalf of itself and a class of other recipients of similar unsolicited faxed advertisements from Autopia.

For its part, Autopia maintained that it had no intent to send unsolicited faxes. It claims to have paid a third party, Business to Business Solutions ("Business to Business"), to send out 5,000 advertisements. Autopia designed the advertisements, and Business to Business faxed them to numerous recipients, including Percic. Business to Business purportedly represented to Autopia that it could conduct a fax-advertising program that complied with faxing guidelines, and that it would send ads only to consenting recipients.

---

opposing party in the underlying litigation. Accordingly, for ease of reference in this Order, the Court will refer to Defendants collectively as "Autopia."

The parties reached a settlement in the underlying lawsuit, and the state court approved it and entered judgment against Autopia and in favor of the plaintiff class in the amount of $1,951,500. (Def. Opp'n Mem. Ex. A, ¶ G.) This amount represents $500 per fax for 3,903 faxes plaintiffs received from Autopia, each of which constituted a violation of the TCPA. The state court's Order provided, pursuant to the parties' agreement, that "[t]he Judgment shall be satisfied only against the Insurers through the proceeds of [Autopia]'s insurance policies." (Id.) It also determined that Autopia "did not willfully or knowingly violate the TCPA." (Id. ¶ 9(f).)

At all relevant times, Autopia was insured by Owners and Auto-Owners. Owners insured Autopia under a "tailored protection policy," which included a commercial general liability ("CGL") policy and a garage policy.[2] Autopia was also covered by a commercial umbrella policy issued by Auto-Owners, which provided additional coverage for claims exceeding the limits in the CGL policy. In the instant action, the Insurers seek a declaration that there is no coverage under Autopia's insurance policies for the claims in the underlying action and they are not obligated to pay the settlement amount. Autopia argues, however, that the claims in the underlying action were covered under two separate policy provisions of the CGL policy: one providing coverage for "property damage," and the other covering "advertising injury."

---

[2] At oral argument, both sides represented that there would be no need to address whether there is coverage under the garage policy if the Court were to determine coverage existed under the CGL policy. Because it finds coverage under the CGL policy, the Court does not address the garage policy.

3

Because the Court finds the issue of advertising-injury coverage dispositive here, it sets forth only the facts relevant to that provision. With respect to advertising injury, the CGL policy provides:

> [Owners] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" to which this coverage part applies.
>
> \* \* \*
>
> This insurance applies to . . . "Advertising injury" caused by an offense committed in the course of advertising your goods, products, or services.

(Id. Ex. C. at 15.) It defines an "advertising injury" as an "injury arising out of one or more of the following offenses . . . (b) Oral or written publication of material that violates a person's right of privacy" (id. at 21), but it does not define the terms "publication" or "privacy."

With respect to the amount of coverage, the CGL policy provides that "the amount [Owners] will pay for damages is limited as described in the LIMITS OF INSURANCE (SECTION III)." (Id. at 11.) Section III of the policy, in turn, provides that the limits of insurance are shown in the Declarations (id. at 18), and the CGL Declarations list a $1,000,000 general aggregate limit on the insurance coverage. (Id. at 7.) This aggregate limit appears to have been doubled by an endorsement for the relevant policy period. (Def. Mem. in Supp. Ex. G, at AUTO00309.) Additionally, the umbrella policy provides coverage for amounts exceeding the aggregate limits of the CGL policy. The applicable clauses in the CGL policy and the umbrella policy provide the same coverage, and the Insurers conceded at oral argument that if there is coverage under the CGL policy, there

4

is also coverage under the umbrella policy. Thus, there is no dispute that the coverage limits are sufficient under either the CGL policy, or the CGL policy plus the umbrella policy, to indemnify Autopia for the entire settlement amount in the underlying action.

When the underlying lawsuit was commenced, Autopia tendered defense of the action to the Insurers. They responded that they "could not conclude that none of the claims in this matter could give rise to a duty to indemnity," and acknowledged their obligation to defend Autopia "until such time as the facts establish that there is no arguable basis for coverage." (Lipschultz Aff. Ex. C.) A few months later, the Insurers initiated the instant action, seeking a declaration that there was no coverage under their policies for the underlying claims against Autopia. Each side has now moved for summary judgment on the issue of coverage. A hearing was held on these Motions on August 23, 2011, and the matter is ripe for decision.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on

mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering Defendants' Motion, the Court views the record in the light most favorable to Plaintiffs, and when considering Plaintiffs' Motion, the Court views the record in the light most favorable to Defendants. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.) (citations omitted), aff'd, No. 10-3532, 2011 WL 873121 (8th Cir. Mar. 15, 2011).

## ANALYSIS

State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Under Minnesota law,[3] interpreting an insurance policy is a question of law for the Court. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997). When policy language is unambiguous, it is interpreted "in accordance with its plain and ordinary meaning." Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004). When an insurance policy's language is ambiguous, however, the Court will generally

---

[3] Neither party suggests that any other state's law applies in this case. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

construe that language against the drafter (the insurer) and in favor of the insured. Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Furthermore, when an insurer argues that an exclusion bars coverage, the burden is on the insurer to establish that the exclusion applies. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311–14 (Minn. 1995).

Autopia argues there is coverage under both the property-damage provision and the advertising-injury provision. The Insurers disagree, arguing that neither covers TCPA violations. For the reasons set forth below, the Court determines that there is coverage under the advertising-injury provision; accordingly, it need not reach the coverage issues with respect to the property-damage provision.

Autopia argues that the Insurers are obligated to provide coverage because the TCPA claim in the underlying action involved advertising injury, which is covered by the policy. The CGL and umbrella policies cover advertising injuries that arise from "oral or written publication of material that violates a person's right of privacy."[4] But the policies do not define "publication" or "right of privacy." The parties dispute the meanings of these terms and whether the advertising-injury provision extends to the TCPA claim at

---

[4] As an initial matter, the Court is not swayed by the Insurers' argument that there can be no coverage because the named plaintiff in the underlying lawsuit, Percic, cannot claim a right to privacy as a corporation. Several courts have explicitly or implicitly rejected this argument in similar situations. See, e.g., Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA, 442 F.3d 1239, 1247 (10th Cir. 2006) (rejecting "out of hand" insurer's argument that there can be no coverage of TCPA claim where underlying plaintiff was a corporation); Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 641 n.10 (4th Cir. 2005) (noting it was "fair to assume" that the class in the underlying action included natural persons as well as corporations); Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876 (8th Cir. 2005) (plaintiff in underlying action was corporation, yet insurer had duty to defend TCPA claim). This Court does likewise.

issue here. In the Court's view, coverage under the advertising-injury provision of the CGL and umbrella policies is appropriate.

The Insurers first urge that there can be no coverage because the underlying lawsuit involved only a TCPA claim and a conversion claim, neither of which is a privacy tort, nor does either require proof of an invasion of privacy. The Court cannot agree. Because the policies do not define "right of privacy," Minnesota law directs the Court to give the policy language its "plain and ordinary meaning," Ill. Farmers Ins. Co., 683 N.W.2d at 799, resolving ambiguities against the Insurers and in favor of Autopia, Nathe Bros., 615 N.W.2d at 344. The Eighth Circuit has determined that "[l]ooking at how Congress described unsolicited fax advertisements, it is clear that Congress viewed violations of the [TCPA] as . . . 'invasions of privacy' under the ordinary, lay meaning[] of the phrase[]." Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 881 (8th Cir. 2005). The policy here does not limit coverage to damages arising from specific causes of action but instead covers advertising injuries arising from a violation of the "right of privacy."[5] The complaint in the underlying lawsuit alleged that Autopia violated the TCPA, averring that "[Autopia]'s faxes unlawfully interrupted Plaintiff's and other class members' privacy interests in being left alone." (Def. Mem. in Supp. Ex. B ¶ 27.) In the Court's view, this is more than sufficient. See Valley Forge

---

[5] Notably, the policy here differs from the one at issue in Ross v. Briggs and Morgan, 540 N.W.2d 843 (Minn. 1995), a case relied upon by the Insurers and emphasized at the hearing on these Motions. In Ross, the CGL policy provided coverage for advertising injury only if it were caused by "one of five enumerated offenses," and the court noted that the duty to defend was not established because there was not "a semantic connection between the policy's enumerated offenses and the claims made in the underlying case." 540 N.W.2d at 847-48.

Ins. Co. v. Swiderski Elecs., Inc., 860 N.E.2d 307, 317 (Ill. 2006) (holding that even where the underlying complaint made no mention of the right of privacy, "a violation of privacy . . . is implicit in a TCPA fax-ad claim."). The TCPA claims at issue involved violations of the "right of privacy" under the ordinary meaning of that phrase.

The Insurers further contend, however, that even if an invasion of privacy were alleged in the underlying lawsuit, it cannot give rise to coverage because of the *type* of privacy invasion at issue. The legal concept of privacy encompasses interests in both secrecy and seclusion. E.g., Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA, 442 F.3d 1239, 1248 (10th Cir. 2006) (citations omitted); accord Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (recognizing four different privacy torts under Minnesota law: appropriation, publication of private facts, false-light publicity, and intrusion upon seclusion). In the Insurers' view, unsolicited faxes invade only the privacy right of seclusion, yet the policies, by requiring "publication" (which the Insurers argue means making information known to third parties), only provide coverage for invasions of the privacy right of secrecy.

Numerous courts have found advertising-injury coverage for TCPA claims based on the ordinary meaning of the terms "publication" and "privacy." For instance, the Illinois Supreme Court in Valley Forge identified two common meanings of "publication," one involving the communication of information to the public, and another referring simply to distributing copies. 860 N.E.2d at 316 (citing Webster's Third New International Dictionary 1836 (2002) and Black's Law Dictionary 1264 (8th ed. 2004)). It held that "[b]y faxing advertisements to the proposed class of fax recipients . . . [the

9

insured] published the advertisements both in the general sense of communicating information to the public and in the sense of distributing copies of the advertisements to the public." <u>Id.</u> at 317. Thus, coverage was appropriate. In another case involving a policy identical to Autopia's, the Tenth Circuit reached the same conclusion, determining that the term "publication" was ambiguous and could mean either communication of material to a third party (thus implicating secrecy) or "the simple transmittal of material to a recipient" (implicating seclusion). <u>Park Univ.</u>, 442 F.3d at 1250. It affirmed the decision to construe this ambiguity against the insurer, finding it "entirely reasonable to define publication as making something generally known" and ruling that the policy provided coverage for seclusion interests as well as secrecy ones. <u>Id.</u>

The Insurers acknowledge that there is a split on this issue, and they identify a number of cases that reach the opposite result.[6] Those cases rely upon the distinction between the privacy interests of secrecy and seclusion to find no coverage. <u>See, e.g.</u>, <u>Auto-Owners Ins. Co. v. Websolv Computing, Inc.</u>, 580 F.3d 543 (7th Cir. 2009) (citing <u>Am. States Ins. Co. v. Capital Assocs. of Jackson Cnty. Inc.</u>, 392 F.3d 939 (7th Cir. 2004)); <u>St. Paul Fire & Marine Ins. Co. v. Bhd. Int'l Corp.</u>, 319 Fed. App'x 121 (3d Cir. 2009); <u>Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.</u>, 407 F.3d 631 (4th Cir. 2005). In this Court's view, this distinction is based upon legalistic and technical definitions of

---

[6] Many of these cases involved policy language distinguishable from Autopia's. For example, the Fourth Circuit found no coverage for TCPA claims where a policy covered injuries caused by "*making known to* any person . . . material that violates a person's right of privacy." <u>Res. Bankshares</u>, 407 F.3d at 634.

10

"privacy," rather than upon the plain and ordinary meaning of the language used in the policies.

> As the Tenth Circuit aptly noted:
>
> [t]he plain and ordinary meaning of privacy includes the right to be left alone.  Certainly, the insurer could impose a more restrictive, technical and legal definition to the term 'privacy' following that of the classic tort of invasion of secrecy interests or defamation.  Such an approach, however, would construe the language of the contract from the vantage of an insurer or an attorney, rather than the insured.  *[The insurer] failed to provide specific terms in the policy to narrow the scope of privacy interest violations for which it intended to provide coverage, and we decline to permit it to do so now.*

Park Univ., 442 F.3d at 1250 (citations omitted) (emphasis added).  Likewise, the Insurers here could have included more restrictive definitions in their policies to narrow the scope of coverage to only certain types of privacy-rights violations, yet they did not do so, and the Court must interpret the policy language as it is written and construe ambiguities in favor of Autopia.  See Ill. Farmers, 683 N.W.2d at 799; Nathe Bros., 615 N.W.2d at 344.  The Court agrees with Valley Forge, Park University, and Lou Fusz,[7] and it determines that the TCPA claim at issue here arose from "oral or written publication of material that violates a person's right of privacy," according to the plain and ordinary meaning of these words.  Accordingly, coverage exists under the advertising-injury provisions of the CGL and umbrella policies.  And because the Court

---

[7] Notably, the policy language at issue in Lou Fusz, the Eighth Circuit case upon which Autopia heavily relies, is distinct from the language here since it does not include any requirement that the violation of the privacy right occur through "publication."  The Eighth Circuit did hold, however, that coverage was appropriate for TCPA violations under a policy provision covering injuries arising from invasions of "privacy."

11

determines that coverage exists under this policy provision, it need not address whether there would also be property-damage coverage under the policies.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. No. 26) is **DENIED**, and Defendants' Joint Motion for Summary Judgment (Doc. No. 28) is **GRANTED**. Plaintiffs have a duty to indemnify Autopia pursuant to the CGL and umbrella policies.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 30, 2011                              s/Richard H. Kyle
                                                    RICHARD H. KYLE
                                                    United States District Judge